# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MELISSA R. LITTLECREEK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-14-531-L |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Melissa R. Littlecreek brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. United States District Judge Tim Leonard has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. Upon review of the administrative record (Doc. No. 9, hereinafter "R. __") and the arguments and authorities submitted by the parties, the undersigned recommends that the Commissioner's decision be reversed and remanded.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed her applications for DIB and SSI on April 21, 2009, alleging a disability onset date of April 10, 2009. R. 182-87, 216. Following denial of her

applications initially and on reconsideration, Plaintiff requested a hearing before an ALJ; the hearing was held on November 4, 2011. R. 28-79, 116-27, 133-40. In addition to Plaintiff, an impartial medical expert and a vocational expert appeared and testified at the hearing. R. 28-79. The ALJ issued an unfavorable decision on September 21, 2012. R. 9-27.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 10, 2009. R. 14. At step two, the ALJ found that Plaintiff had the severe impairments of lower back pain with radiation of pain down the right leg and mononeuropathy of both wrists. R. 14-16. At step three, the ALJ determined that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 16.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her impairments. R. 16-22; *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The ALJ found that Plaintiff had the ability to perform "a limited range of light work":

> The claimant can lift/carry up to 20 pounds occasionally and up to 10 pounds frequently. She can stand and/or walk for 6 hours (with normal breaks) of an 8-hour workday and sit for 6 hours (with normal breaks) of an 8-hour workday. She can occasionally climb ramps and stairs, and occasionally stoop and balance. She must avoid exposure to hazardous machinery and unprotected heights. No assistive device has been prescribed despite statements of falling, but an assistive device might be helpful if used part of the time. She must be able to alternate sitting and standing for 20 minutes at a time in each position.

R. 16; *see* 20 C.F.R. §§ 404.1567(b), .1569a, 416.967(b), .969a. The ALJ determined at

step four that Plaintiff was unable to perform any of her past relevant work of certified nurse's aide, medication technician, fast-foods worker, or crew leader. R. 22.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work experience, and RFC—could perform. R. 22-23. Taking into consideration the vocational expert's testimony regarding the degree of erosion to Plaintiff's unskilled light occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform sedentary unskilled occupations such as washroom operator and food and beverage order clerk and that such occupations offer jobs that exist in significant numbers in the national economy. R. 22-23; *see* 20 C.F.R. §§ 404.1545(a)(5)(ii), 416.945(a)(5)(ii). On that basis, the ALJ held that Plaintiff had not been disabled within the meaning of the Social Security Act at any time from April 10, 2009, through the date of the decision. R. 23; *see* 20 C.F.R. §§ 404.1520(g), 416.920(g).

Plaintiff's request for review was denied by the SSA Appeals Council on March 20, 2014. R. 1-7. The ALJ's unfavorable decision now stands as the Commissioner's final determination of Plaintiff's DIB and SSI applications. *See* 20 C.F.R. §§ 404.981, 416.1481. Thereafter, Plaintiff commenced this appeal.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ANALYSIS

On appeal, Plaintiff raises two challenges the ALJ's decision. First, Plaintiff asserts that the ALJ failed to properly evaluate the opinion of consulting psychologist Ron Smallwood, PhD. Pl.'s Br. (Doc. No. 11) at 2-10.[1] Second, Plaintiff objects that the ALJ's RFC determination was flawed in its treatment of Plaintiff's mononeuropathy in her wrists and of her medically determinable mental impairment. Pl.'s Br. at 10-15.

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

I. *Whether the ALJ Properly Considered the Opinion of Dr. Ron Smallwood*

In March 2010, state agency consulting psychologist Dr. Smallwood issued two reports: a Mental Residual Functional Capacity Assessment ("MRFC") and a Psychiatric Review Technique ("PRT") report. R. 311-28. In the MRFC, Dr. Smallwood found that Plaintiff had marked limitations in her abilities: "to understand and remember detailed instructions"; "to carry out detailed instructions"; and "to interact appropriately with the general public." R. 311-12. Dr. Smallwood concluded that while Plaintiff "can adapt to a work situation," Plaintiff "cannot relate to the general public." R. 313. In the PRT, Dr. Smallwood diagnosed Plaintiff with "[m]ajor depression, single episode, moderate," and he opined that Plaintiff had a severe mental impairment due to moderate limitations in three functional areas: restriction of activities of daily living ("ADLs"); difficulties maintaining social functioning; and difficulties maintaining concentration, persistence, or pace. R. 315 (stating "RFC Assessment Necessary"), 318, 325, 327; *see* 20 C.F.R. §§ 404.1520a(d)(3) ("If we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your [RFC]."), 416.920a(d)(3) (same). Dr. Smallwood opined that Plaintiff had no episodes of extended decompensation. R. 327.

Despite this state agency psychologist's diagnosis of a severe impairment of major depression and findings of moderate limitations in three of the four functional areas (such that Plaintiff can have no interaction with the general public), the ALJ determined that Plaintiff had no severe mental impairment and, for purposes of the RFC, no mental functional limitations. The ALJ agreed there were no episodes of extended

5

decompensation but found only "mild" limitation with respect to Plaintiff's ADLs, social functioning, and concentration, persistence, or pace. R. 15. Based on these findings, the ALJ concluded that Plaintiff's "medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." R. 15. *See generally* 20 C.F.R. §§ 404.1520a(d)(1) ("If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe . . . ."), 416.920a(d)(1) (same). Further, the ALJ, in formulating Plaintiff's RFC, found:

> As for the opinion evidence, pursuant to SSR 96-6p, the [ALJ] has also considered the opinions of the State Agency psychologists who evaluated the evidence of record at the initial and reconsideration levels of the administrative review process and assessed that the claimant retained the capacity to perform simple tasks with routine supervision, can relate to supervisors and peers on a superficial work basis, cannot relate to the general public, and can adapt to a work situation. The [ALJ] generally agrees with the State agency medical consultants that the claimant's impairments are not disabling; however, he makes a different interpretation of the claimant's ability to interact appropriately with the general public. Dr. Ron Smallwood, Ph.D., assessed the claimant as markedly limited in this area. However, her past work experience indicates she is able to interact adequately with the general public as a fast food worker, even in a leadership role as a crew leader. In fact, she worked as a fast food worker after the alleged onset date. The claimant has no history of treatment by a mental health professional. She is prescribed antidepressants by her family care practitioner. Accordingly, the undersigned gives the opinions of the State agency psychologist partial weight (Exhibits 6F and 7F).

R. 21-22.[2]  The ALJ assigned no limitations in the RFC related to mental functioning, including no limitation on interaction with the public.  R. 16.

Plaintiff objects that the ALJ improperly rejected two aspects of Dr. Smallwood's opinion: (i) at step two, Dr. Smallwood's assessment that Plaintiff has a severe mental impairment, with marked and moderate limitations resulting from that impairment in multiple functional areas; and (ii) in the RFC determination, Dr. Smallwood's conclusion that Plaintiff cannot relate to the general public.  Pl.'s Br. at 2-10.  The undersigned agrees and finds that remand of this matter is required.

- *Step Two*

An ALJ "may not ignore" the opinions of a state psychological consultant such as Dr. Smallwood but "must explain the weight given to the [consultant's] opinions" in his or her decision.  SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996).  Here, the ALJ was required to consider Dr. Smallwood's findings "about the nature and severity of" Plaintiff's mental impairment "as expert opinion evidence," "using all of the applicable rules in 20 CFR 404.1527 and 416.927 to determine the weight to be given to the opinion."  SSR 96-5p, 1996 WL 374183, at *6 (July 2, 1996).  While ALJ is "not bound by any findings made by State agency medical or psychological consultants,"

> [w]hen an [ALJ] considers findings of a State agency medical or psychological consultant . . . , the [ALJ] will evaluate the findings using the

---

[2] As discussed further below, in March 2010 Plaintiff was evaluated by psychologist Gerald Ball, PhD, who issued a Mental Status Evaluation ("MSE").  R. 308-10.  The ALJ appears to be referencing Dr. Ball's MSE together with Dr. Smallwood's opinions in the first portion of the quoted text, where the ALJ refers to the "State agency psychologists." *See* R. 15, 18-19, 21, 308-10.

7

> relevant factors in paragraphs (a) through (d) of [20 C.F.R. §§ 404.1527, 416.927], such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions.

20 C.F.R. §§ 404.1527(e)(2)(i), (ii), 416.927(e)(2)(i), (ii).

The ALJ at step two relied heavily on the Mental Status Examination ("MSE") issued by state examining psychologist Gerald Ball, PhD, on March 11, 2010, to conclude that Plaintiff suffered only mild limitations in three functional areas (ADLs; social functioning; and concentration, persistence, and pace). R. 15; *see* R. 308-10. In particular, the ALJ found, based primarily upon testing performed upon Plaintiff by Dr. Ball and summarized in the MSE, that Plaintiff was only mildly limited in concentration, persistence, or pace. *See* R. 15, 309. But Dr. Smallwood expressly relied upon this same description of testing, in the same MSE, to reach the conclusion that Plaintiff had a *moderate* limitation in the functional area of concentration, persistence, or pace. R. 309, 325, 327. In his decision ALJ does not note Dr. Smallwood's finding or explain the discrepancy. R. 15; *see* SSR 96-6p, 1996 WL 374180, at *2 (directing that ALJs "may not ignore" consultants' opinions). In other words, the ALJ and Dr. Smallwood each rely upon Dr. Ball's MSE to reach a significantly different conclusion as to Plaintiff's limitations in concentration, persistence, or pace—a conclusion that, in combination with the findings in other functional areas, directly informs the determination of whether Plaintiff suffers from a "severe" mental impairment. *See* R. 308-09; 20 C.F.R. §§ 404.1520a(d), 416.920a(d). *Compare* R. 15, *with* R. 325, 327.

The ALJ fails to adequately explain how he relied upon the same underlying MSE as Dr. Smallwood, cited no medical evidence contradicting the opinion of Dr. Smallwood, yet reached conclusions at step two that are inconsistent with those reached in the unmentioned "expert opinion evidence" of Dr. Smallwood. R. 15; SSR 96-5p, 1996 WL 374183, at *6. Although Dr. Smallwood was not Plaintiff's treating psychologist, the ALJ was still required to consider his opinion, to evaluate the opinion using the prescribed regulatory factors, and to "explain in the decision the weight given" to that opinion. 20 C.F.R. §§ 404.1527(a)-(d), (e)(2)(ii), 416.927(a)-(d), (e)(2)(ii); SSR 96-5p, 1996 WL 374183, at *6; *cf. Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir. 1987) ("While the ALJ is authorized to make a final decision concerning disability, he can not interpose his own 'medical expertise' over that of a physician . . . .").

- *RFC Determination*

In his RFC determination, the ALJ specifically rejected Dr. Smallwood's opinion that Plaintiff had marked limitations in her ability to interact appropriately with, and "cannot relate to," the general public. R. 21-22, 312, 313. The RFC accordingly contains no restrictions or conditions upon Plaintiff's public contact, which Plaintiff contends is prejudicial error. R. 16; Pl.'s Br. at 7-10. The undersigned agrees that the reasons given by the ALJ for rejection of the state agency psychologist's opinion that Plaintiff cannot interact with the general public—and assignment of no limitations in that capacity—are not adequate in light of the deference required by the regulations and not supported by the record as a whole.

9

The ALJ first noted that Plaintiff's "past work experience indicates she is able to interact adequately with the general public as a fast food worker, even in a leadership role as a crew leader" and that Plaintiff "worked as a fast food worker after the alleged onset date." R. 21. The record reflects that Plaintiff began working a reduced amount of approximately 25-30 hours per week at a fast-food restaurant in April 2009, which is the month in which she filed her applications for benefits and also the month of alleged onset of her disability. R. 42, 206-15, 216, 221. Plaintiff testified that she was let go from this fast-food job in August 2009 because she had to attend physical therapy (and, presumably, had to miss work to do so). R. 42-43.

Work that a claimant has done after the alleged disability onset date may show that the claimant is able to work at the level of substantial gainful activity, even if that post-onset work did not itself amount to substantial gainful activity. 20 C.F.R. §§ 404.1571, 416.971. *See generally id.* §§ 404.1572 (defining "substantial gainful activity"), 416.972 (same). The ALJ's consideration of Plaintiff's past work experience therefore was not legally erroneous and did not, by itself, render his treatment of Dr. Smallwood's opinion unsupported by substantial evidence. *See id.* §§ 404.1571, 416.971. The probative value of Plaintiff's previous job for supporting a finding of nondisability is diminished, however, by the fact that Plaintiff's part-time employment lasted only a few months past her alleged disability onset date and because this job did not amount to substantial gainful activity. R. 14, 42-43, 213; *cf. Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995) (affirming denial of benefits where claimant had stopped working several years prior to alleged onset date). Although not noted by the ALJ, Plaintiff reported to the SSA that she

received special work conditions at the fast-food restaurant on account of her medical condition, including reduced hours and "different," "fewer or easier duties." R. 207, 208-09. Plaintiff testified that she had applied for another fast-food job after being terminated, but did not believe she would be able to meet that job's requirements for lifting and holding. R. 77-78. Plaintiff did not hold any other jobs during the relevant disability period. Further, while the ALJ discounted the credibility owed to Plaintiff's statements regarding her symptoms, R. 17, at the hearing the impartial medical expert testified that when a person is depressed, there is "[a]bsolutely" a tendency "for the pain symptoms to be magnified." R. 45; *see* R. 333 (treatment note of Nathan Boren, MD, stating that he suspects somatization disorder in connection with Plaintiff's generalized pain).

More problematic is the ALJ's conclusion that he "ma[de] a different interpretation of [Plaintiff's] ability to interact appropriately with the general public" than did Dr. Smallwood because Plaintiff "has no history of treatment by a mental health professional" and "is prescribed antidepressants by her family care practitioner." R. 21. The ALJ's depiction of Plaintiff's mental health treatment is incomplete: while there was no record of previous treatment by a psychologist or psychiatrist, as noted elsewhere in the decision Plaintiff testified that she had received a referral and was on a waiting list at the tribal health clinic—where she received nearly all of her health care—to receive a behavioral health appointment with a psychiatrist. R. 17, 40, 41-42, 56, 62; *see* R. 333. Plaintiff also testified that she received counseling from an individual in her church. R. 56, 63; *cf. Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (directing that an ALJ

11

may consider the extensiveness of a claimant's attempts to obtain relief, either "medical or nonmedical," in assessing the credibility of pain testimony).

On appeal, the Commissioner argues that the ALJ properly rejected Dr. Smallwood's opinion because "Plaintiff did not seek significant ongoing mental health treatment, with the exception of treatment with medication." Def.'s Br. (Doc. No. 17) at 17 (citing *Bean*, 77 F.3d 1210; *Barnett v. Apfel*, 231 F.3d 687 (10th Cir. 2000); *Browning v. Sullivan*, 958 F.2d 817 (8th Cir. 1992)). The record reflects, however, that regardless of whether the prescriber held a PhD or an MD Plaintiff sought and received an arguably "significant" level of mental health treatment for her depression at the tribal health clinic, resulting in Plaintiff being instructed to take Effexor and/or Cymbalta for a period of more than two-and-a-half years. R. 39-40 (Plaintiff taking Effexor and Cymbalta in November 2011), 246 (Plaintiff taking Cymbalta in January 2010), 308 (Plaintiff taking Cymbalta in March 2010), 332 (Plaintiff prescribed Effexor in May 2010), 342 (Plaintiff taking Effexor in April 2012), 352 (Plaintiff taking Effexor in August 2012), 358 (Plaintiff taking Effexor in October 2012).

In addition, the cases cited by the Commissioner addressed circumstances quite different than those before the ALJ here. In *Bean*, the Tenth Circuit affirmed an ALJ's denial of benefits where the claimant had alleged "disabling pain" but had sought no medical treatment for such pain until several years after her alleged onset date. *See Bean*, 77 F.3d at 1213-14. And in *Barnett*, the denial of benefits was affirmed where the claimant "had not been treated by her physicians during the nine months preceding the hearing" and "was not taking prescription pain medication." *Barnett*, 231 F.3d at 690.

Here, by contrast, Plaintiff did not fail to seek treatment at the time she alleged her pain began, and she continued to receive such treatment throughout the disability period. The record shows that Plaintiff sought medical treatment for her back condition as early as April 2009, which is consistent with the alleged onset date of her disability, and received medical treatment and prescription medication for her depression by at least January 2010 and on an ongoing basis during the disability period. *See, e.g.*, R. 39-40, 246, 262-66, 295-96, 298, 330-33, 335, 340-49, 350-54, 358-66.

The Commissioner cites the Eighth Circuit's decision in *Browning* for the proposition that the "ALJ properly found nonsevere" a "claimant's mental impairment treated with only medication." Def.'s Br. at 17 (citing *Browning*, 958 F.2d at 819, 821). While this characterization of *Browning* is technically accurate, the claimant's medication-only treatment was not the appellate court's stated basis for upholding the ALJ's decision: the *Browning* court emphasized that the ALJ's finding of nonseverity was based upon the ALJ's finding under 20 C.F.R. § 404.1520a(d) that the claimant's mental impairment resulted in "too little functional limitation to be classified as a severe impairment," which the appellate court found to be supported by the record. *Browning*, 958 F.2d at 820, 821. Here, as outlined above, the ALJ's application of 20 C.F.R. §§ 404.1520a(d) and 416.1520a(d) cannot be said to be supported by the record due to the ALJ's improper consideration of Dr. Smallwood's opinion evidence at step two. Finally, Dr. Smallwood himself expressly noted that Plaintiff was not receiving counseling or psychotherapy but nonetheless concluded that Plaintiff suffers from a severe mental impairment and cannot relate to the general public. R. 327; *cf. Winfrey v. Chater*, 92 F.3d

1017, 1022-23 (10th Cir. 1996) (holding that ALJ erred in "second-guess[ing] a medical expert's judgment," rejecting an examining psychologist's opinions absent "adequate justification," and "substituting his own medical judgment for that of mental health professionals"). Under the circumstances of this case, the Commissioner's cited authorities do not establish that the ALJ could properly reject Dr. Smallwood's opinion on the basis of Plaintiff's mental health treatment efforts.

II.     *Conclusion*

In sum, the ALJ's partial rejection of Dr. Smallwood's opinion at step two did not sufficiently evaluate that evidence or adequately support the ALJ's differing conclusion, as required by applicable regulations and Social Security Rulings. *See* 20 C.F.R. §§ 404.1527(a)-(d), (e)(2)(ii), 416.927(a)-(d), (e)(2)(ii); SSR 96-5p, 1996 WL 374183, at *6. In addition, the ALJ's stated reasons for discounting Dr. Smallwood's opinions for purposes of determining Plaintiff's RFC are not sufficiently supported by the record, as explained above. Considered cumulatively, the ALJ's consideration of Dr. Smallwood's opinion failed to follow the correct legal standards and rendered the ALJ's findings at step two and in the RFC determination unsupported by substantial evidence. Because Plaintiff's additional appellate challenge to the RFC determination—and, particularly, Plaintiff's objection that the ALJ failed to properly consider her mental impairment— "may be affected by the ALJ's treatment of this case on remand," the undersigned ends his analysis here. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).[3]

---

[3] In the written decision, the ALJ noted that Plaintiff was 5'4" and weighed 240 pounds, and that Plaintiff had gained 50-60 pounds in a year, but did not discuss the issue of Plaintiff's

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be REVERSED and REMANDED for further proceedings consistent with this opinion.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72(c). Any such objections must be filed with the Clerk of this Court by September 1, 2015. The parties further are advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 18th day of August, 2015.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE

---

obesity. *See* R. 17; *see also* R. 20, 57-58. The undersigned makes no recommendation or finding on this issue but notes that Social Security Ruling 02-1p provides guidance for ALJs in considering whether a claimant's obesity results in any functional limitations or affects a claimant's other physical or mental conditions. *See* SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002).